# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| GUM CREEK CUSTOMS LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:16-cv-114(MTT) |
| TROPHY HUNTING PRODUCTS, INC. | ) ) ) |
| Defendant. | ) ) ) |

## ORDER

In this patent infringement action, the Court convened a claim construction hearing on April 19, 2017, and the parties have thoroughly briefed the relevant issues. Docs. 21; 24; 25; 28; 29; 30. The parties contest four terms, all from the following portion of Claim 1 of the patent:

> a first attachment means attached at said first end of said adjustable tension strap and co-axial to central axis A, said first attachment means capable of being received in a gap in a vehicle interior positioned below and adjacent a steering wheel column of said vehicle,
>
> a second attachment means attached to said distal end of said adjustable tension strap and co-axial to central axis A, said second attachment means capable of being received in a lower gap between dash plates in the vehicle interior positioned below said first attachment means . . . .

Doc. 1-1 at 15-16.

As discussed below, the four disputed terms are constructed as follows:

> (1) a hook-shaped device attached to one end of an adjustable tension strap and having a common axis with the tension strap's central axis (central axis A)

(2) this first hook-shaped device capable of being received in a gap in a vehicle interior positioned below and adjacent to the vehicle's steering wheel column

(3) a hook-shaped device attached to the other end of the adjustable tension strap and having a common axis with the tension strap's central axis (central axis A)

(4) this second hook-shaped device capable of being received in a lower gap between dash plates in the vehicle interior positioned below the first hook-shaped device to allow tension to secure the holster vehicle mount

# I. BACKGROUND

A brief description of the parties' claims and respective products is appropriate. The Plaintiff, Gum Creek Customs, LLC, alleges that the Defendant, Trophy Hunting Products, Inc., infringed on the Plaintiff's patent for a vehicle gun mount. Doc. 1 at 3, 7. The Defendant denies the Plaintiff's allegation and counterclaims that the Plaintiff's patent is invalid. Doc. 8 at 8.

Both the Defendant's gun mount and the Plaintiff's patent for a gun mount have a strap that attaches to the interior of a vehicle below the vehicle's steering column. A pistol holster can then be affixed to the strap. Both gun mounts have a hook at the end of the strap further from the steering wheel that is inserted in a gap in the vehicle dashboard (the second attachment means). In the Defendant's product, the first attachment means, at the end of the strap closer to the steering wheel, is a strap that loops around the steering wheel itself. However, as discussed below, the parties disagree about the scope of the first attachment means in the Plaintiff's patent. For both gun mounts, the means of attachment at the ends of the strap create tension, and the tension secures the mount in place. One product derived from the Plaintiff's patent is marked below as Defendant's

Exhibit 1, and the Defendant's product is marked as Defendant's Exhibit 2.





Before a patent infringement matter may be decided by a factfinder, the meaning of the words in the allegedly infringed patent claims must be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). The Court must construe claims according to "their ordinary and customary meaning," and "the ordinary and customary meaning of a claim term is the meaning that the term would have to a

person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (citations omitted).  When construing claims, the Court must primarily consider the patent's intrinsic evidence: the claims themselves, the patent specification, and the prosecution history.  *Id.* at 1317.

By statute, patents may express claim elements "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112(f).[1]  Using this type of means-plus-function claim allows "an applicant [to] describe an element of his invention by the result accomplished or the function served, rather than describing the term or elements to be used . . . ."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 (1997).  The word "means" in the claim "invokes a rebuttable presumption that § 112, ¶ 6 applies," and the absence of the word invokes a rebuttable presumption that § 112, ¶ 6 does not apply.  *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-72 (Fed. Cir. 2003) (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002)).  The presumption that a claim term is means-plus-function "can be rebutted where the claim, in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety."  *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003) (citation omitted).

Here, the parties have identified four claim terms to be construed.  Doc. 21 at 1.  All four disputed terms are located in a section of Claim 1 of the patent.  Doc. 1-1 at 15-16.  The parties agree that all four claims are means-plus-function claims.  *See* Doc. 24 at

---

[1] Congress recently re-organized the statute so that 35 U.S.C. § 112(f) replaced the previous 35 U.S.C. § 112, ¶ 6, but this change did not alter the provision's substance.

5 ("The 'first attachment means' [which appears in the first and second disputed terms] and the 'second attachment means' [which appears in the third and fourth disputed terms] should be construed under Section 112, Paragraph 6, to include all the corresponding structures described in the specification (and equivalents thereof) that perform the functions recited in the claims."); Doc. 25 at 12 ("All four of the claim terms at issue are 'means plus function' claim terms."). The Court agrees. Each claim defines either a "first attachment means" or a "second attachment means," and this use of the term "means" creates a rebuttable presumption that the claims are means-plus-function. The parties have not argued that any evidence rebuts this presumption, and the Court identifies no rebutting evidence; the patent does not "recite[] structure sufficient to perform the claimed function in its entirety." *Altiris, Inc.*, 318 F.3d at 1375 (citation omitted). Accordingly, the Court's task is to identify the function of each disputed claim term and determine the corresponding structure or structures in the written description necessary to perform that function. *Id.* (citations omitted).

## II. DISCUSSION

The Court construes each claim term in turn, addressing the parties' requested constructions and adding small clarifying changes.

### A. First Term

The first term in dispute is "a first attachment means attached at said first end of said adjustable tension strap and co-axial to central axis A." Doc. 21 at 1. Claim 1 goes on to provide that "said first attachment means capable of being received in a gap in a vehicle interior positioned below and adjacent a steering wheel column of said vehicle. Doc. 1-1 at 15. The Plaintiff requests the following construction: "a first attachment

means having a first axis passing near its center, wherein said first attachment means is attached at said first end of said adjustable tension strap and wherein said first axis is generally co-axial to central axis A." *Id.* at 2. The Defendant requests instead: "A hook-shaped device attached to the first end of the adjustable tension strap in line with the central axis of the tension strap." *Id.*

The Plaintiff roots its proposed means-plus-function construction of the first attachment means in three functions identified in Claim 1: "(1) being attached to the adjustable strap[,] (2) being 'capable of being received' in a gap, and (3) being under tension and co-axial with the adjustable gap." Doc. 24 at 5. The Plaintiff argues that "at least three" structures correspond to these functions: "(1) a generally hook-shaped structure, (2) a steering column strap, and (3) a steering column strap connected by a D-shaped ring to the adjustable strap." *Id.* The Defendant argues that "part of the function" of the first attachment means "is to use the gap identified in the claim." Doc. 25 at 15. The first of the Plaintiff's proposed corresponding structures—the hook—performs this function, but the other two—the straps—do not.

The Plaintiff points to the described embodiment of Figure 2 of the patent, which shows a steering column strap rather than a hook as the attachment means. Doc. 24 at 13; Doc. 1-1 at 2. Similarly, the Plaintiff notes the described embodiment Figures 7A and 7B, which show a steering column strap connected to the holster vehicle mount. Doc. 24 at 13; Doc. 1-1 at 7. But the Court agrees with the Defendant: Figure 2 "appears to be illustration of Claim 5." Doc. 25 at 5. The same is true of Figures 7A and 7B. The patent specification reads:

> FIG. 2 illustrates another exemplary embodiment holster
> vehicle mount 10 in place in a vehicle. In this exemplary

> vehicle installation there is either no gap, too small of a gap, or
> the user elected to install holster vehicle mount 10 in an
> installation in which instead of utilizing an upper gap, a strap
> or other device, such as steering column strap 80, is affixed to
> steering column 16 such that the upper portion of holster
> vehicle mount 10 is affixed to the strap, or a component
> thereof.

Doc. 1-1 at 13. Likewise Figures 7A and 7B:

> FIGS. 7A-7B illustrate various exemplary embodiment steering
> column straps 80. FIG. 7A illustrates steering column strap 80
> having a "D" ring 82 attached thereto. FIG. 7B illustrates
> steering column strap 80 having a ring 84 positioned in-line
> with the strap. These straps may be elastic, or secured about
> steering wheel column 16 by means known to those in the art
> including, but not limited to, buckles, snaps, hooks and loops,
> zippers, gluing, welding and bonding.

*Id.* at 15. Claim 5 of the patent claims part of the invention as: "The holster vehicle mount of claim 1, further comprising a steering column strap shaped and sized to fit around a steering column of a vehicle." *Id.* at 16. The Court agrees with the Defendant that "[t]he use of the term 'further comprising' in Claim 5 supports the construction that the steering column strap is in addition to the 'first attachment means' (which is already specified in Claim 1) and not another structure for that 'first attachment means.'" Doc. 25 at 5. Accordingly, the Court reads Figures 2, 7A, and 7B as preferred embodiments of Claim 5, not Claim 1. The portion of Figure 2 which relates to Claim 1 is only the holster vehicle mount 10, which is attached to but is separate and distinct from the steering column strap 80.[2]

Therefore, while the Plaintiff's patent clearly contemplated using steering column straps, the latter two of the Plaintiff's proposed corresponding structures—the straps— relate to Claim 5 of the Plaintiff's patent, not Claim 1. Indeed, the challenge the Plaintiff

---

[2] Indeed, throughout the patent specification, preferred embodiments of Claim 1 are identified as "10." *See* Doc. 1-1 at 1-3, 11-15.

faces with its urged construction of the first attachment means in Claim 1 became evident at the claim construction hearing. Doc. 30. At the hearing, the Court noted its difficulty understanding the Plaintiff's explanation of how steering column straps are "capable of being received in a gap," pursuant to Claim 1. Eventually, the Court asked Plaintiff's counsel to draw what he was trying to explain. That drawing is marked as Plaintiff's Exhibit 1, below.





For the Plaintiff, the fact that the steering column strap crosses the plane of the gap opening would meet the requirement that the first attachment means be "capable of being received in a gap." But the Court is not at all convinced the steering column strap accomplishes the function of being received in a gap, as understood by a person of ordinary skill in the art. Instead, of the patent's written descriptions, only a hook-shaped structure is capable of being (1) attached at the first end of the adjustable strap, (2) received in a gap, and (3) under tension and co-axial with the adjustable gap, as Claim 1 describes the first attachment means.

Indeed, the function limitation "capable of being received in a gap in a vehicle interior" was added by the Plaintiff specifically as part of an effort to "further narrow[] the claims and place[] the application in better condition for allowance," and it accomplished that goal. Doc. 25-1 at 41, 42, 231. The Plaintiff's prior patent application had stated "a first attachment means attached at said first end of said adjustable tension strap and co-axial to central axis A," without reference to "capable of being received in a gap in a vehicle interior." *Id.* at 65. The United States Patent Office rejected that application "as being anticipated by" an already-existing patent for a gun mount. *Id.* at 76. Consequently, the Plaintiff supplemented its application to add the phrase "said first attachment means capable of being received in a gap in a vehicle interior positioned below and adjacent a steering wheel column of said vehicle." *Id.* at 41. The Patent Office then allowed the patent's supplemented claims. *Id.* at 39.[3] The changes from a rejected patent application to an accepted patent are accorded "weight, for the patentability of the claims hinged upon their presence in the claim language." *Jansen v. Rexall Sundown,*

---

[3] The Plaintiff added a similar change regarding the second attachment means. *See* Doc. 25-1 at 42 ("[S]aid second attachment means capable of being received in a lower gap between dash plates in the vehicle interior positioned below said first attachment means.").

*Inc.*, 342 F.3d 1329, 1333 (Fed. Cir. 2003). Granting the latter two of the Plaintiff's proposed corresponding structures would deny weight to the added limitation of Claim 1, "capable of being received in a gap."

The Plaintiff also argues that adding the word "generally" before "co-axial" would remove ambiguity and "prevent the Defendant . . . from later asserting that the bare term 'co-axial' should be understood as requiring an absolute or perfect co-axial orientation between elements." Doc. 24 at 7-8. But the Plaintiff identifies no support for this broadening construction in the patent, the patent specification, or the prosecution history, and the Court finds none. Although the Plaintiff argues that "the inventors did not specify that the co-axial limitation required an absolute or perfect co-axial orientation," they did specify "co-axial to central axis A," without a qualifying term such as "generally." Doc. 24 at 7; Doc. 1-1 at 15.

The Plaintiff also requests that the Court add "having a first axis passing near its center." Doc. 21 at 2. It argues that such a construction is necessary because "[a]ll of the corresponding structures described in the specification . . . may have an axis and it may pass near its center." Doc. 24 at 7. But, as with "generally," nothing in the patent, patent specification, or prosecution history justifies adding this language, which confuses, rather than clarifies, the claim to be construed.

As to the term "co-axial," the Court uses the construction suggested by the Defendant, "having a common axis," which would be known to a person of common understanding in the art at the time of the patent. Doc. 28 at 5. As the Plaintiff notes, the patent specification does not identify a special meaning for "coaxial," so construing the term by its dictionary definition is appropriate. Doc. 24 at 6; *see also Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996) ("Judges . . . may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.").

The Court also agrees with describing the "central axis A" of the disputed term as belonging to the tension strap, as the Defendant proposes. However, the Court agrees with the Plaintiff that reference to "central axis A" is still necessary, because the portion of Claim 1 immediately preceding the first contested term is "an adjustable tension strap having a first surface, second surface, thickness T, first end and distal end and a central axis A." Doc. 1-1 at 15.

Accordingly, the Court construes the first disputed term as follows: "a hook-shaped device attached to one end of an adjustable tension strap and having a common axis with the tension strap's central axis (central axis A)."

### B. Second Term

The second disputed claim term is "said first attachment means capable of being received in a gap in a vehicle interior positioned below and adjacent a steering wheel column of said vehicle." Doc. 21 at 1. The Plaintiff requests instead: "wherein at least a portion of said first attachment means is capable of being received in a gap in a vehicle interior positioned below and adjacent a steering wheel column of said vehicle." *Id*. at 4. The Defendant requests: "the first hook-shaped device capable of fitting into a gap in a vehicle interior positioned below and adjacent a steering column of the vehicle to allow tension to be applied to hold the holster mount in place." *Id.*

-11-

The Plaintiff requests adding "wherein at least a portion of" and "is" because the functions are accomplished by a structure which places only a portion of the first attachment means in a gap, and placing the entire first attachment means in a gap would make the functions impossible. Doc. 24 at 9-10. The Court agrees that "nothing in the specification or file history provides any grounds for requiring that *all parts* of the 'first attachment means' structure must be capable of being received in a gap." Doc. 24 at 9 (emphasis in original). But the Court finds that the Plaintiff's proposed construction muddles a point that is already clear; a person of ordinary skill in the art would not construe "capable of being received in a gap" to require complete immersion in a gap. Rather, the existing language clearly shows that the first attachment means is "capable of being received in a gap" in the same way that a key is "capable of being received in a lock" or a phone charger is "capable of being received in an electrical outlet."

The Defendant argues that the Court should change the phrase "capable of being received in a gap" to "capable of fitting into a gap." Doc. 21 at 4. According to the Defendant, this change is necessary to clarify the meaning of the word "receive" and to "emphasize[] that the attachment means are used to hold the tension strap in the respective gaps." Doc. 28 at 7. But "[i]f the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricting to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Here, "capable of being received" is clear, and, as discussed immediately below and in the section regarding the fourth disputed claim, other claim constructions make clear that the attachment means are used to hold the tension strap.

The Defendant also requests adding "to allow tension to be applied to hold the holster mount in place." Doc. 21 at 4. The Defendant's preferred construction is consistent with all of the structures identified in the patent's written descriptions and preferred embodiments capable of "(1) being attached to the adjustable strap[,] (2) being 'capable of being received' in a gap, and (3) being under tension and co-axial with the adjustable gap." Doc. 24 at 5. The Plaintiff has not identified, and the Court cannot find, a structure capable of those three functions of Claim 1 which does not use the vehicle gap to create tension. However, this reasoning also applies to the similar fourth disputed claim, and the tension function is clear if used in either construed term. Therefore the Court only adds this requested construction to the fourth disputed term, as discussed below, and not the second.

Accordingly, the Court construes the second disputed term as follows: "this first hook-shaped device capable of being received in a gap in a vehicle interior positioned below and adjacent to the vehicle's steering wheel column."

**C.     Third Term**

The third claim term for the Court to construe is "a second attachment means attached to said distal end of said adjustable tension strap and co-axial to central axis A." Doc. 21 at 1. The Plaintiff requests: "a second attachment means having a second axis passing near its center, wherein said second attachment means is attached to said distal end of said adjustable tension strap and wherein said second axis is generally co-axial to central axis A." *Id.* at 4. The Defendant requests instead: "A hook-shaped device attached to the other end of the adjustable tension strap in line with the central axis of the tension strap." *Id.*

The language of this contested term largely tracks the language of the first disputed term. The Plaintiff and the Defendant's arguments for claim construction also echo their arguments regarding the first disputed term. *See* Doc. 24 at 11 ("The 'second attachment means' performs the same first function as the 'first attachment means' except it is attached to the distal end of the adjustable tension strap. For all the same reasons discussed as to the 'first attachment means,' the court should adopt [the Plaintiff]'s proposed construction for the 'second attachment means' because it comports with the plain and ordinary meaning of the claims as understood by someone of skill in the art."); Doc. 25 at 14 ("Moreover, Terms 1 and 3 have essentially the same wording, both in the patent and in the proposed constructions, except that they refer to different ends of the tension strap. The same is true for Terms 2 and 4, except one refers to the gap adjacent to the steering wheel and the other refers to the gap below that gap.").[4]

Accordingly, the Court construes the third disputed term similarly to the first, for the reasons discussed in that section: "a hook-shaped device attached to the other end of the adjustable tension strap and having a common axis with the tension strap's central axis (central axis A)."

## D. Fourth Term

The fourth and final term in dispute is "said second attachment means capable of being received in a lower gap between dash plates in the vehicle interior positioned below said first attachment means." Doc. 21 at 1. The Plaintiff requests: "wherein at least a

---

[4] The Plaintiff argues that the three structures it identified relating to the first attachment means should also apply to the second attachment means. Doc. 24 at 11. But the Plaintiff elsewhere concedes that "the specification discloses a generally hook-shaped structure" for the second attachment means. *Id.* at 5. Indeed, even if, contrary to the Court's construction of the first and second claim terms as discussed above, the item marked 10 in Figure 2 were different from other 10s throughout the patent specification and the first attachment means did not require a hook-shaped structure, all of the written descriptions and preferred embodiments relating to Claim 1 or Claim 5 clearly contemplate a hook attachment as the second attachment means. *See, e.g.*, Doc. 1-1 at 2.

portion of said second attachment means is capable of being received in a lower gap between dash plates in the vehicle interior positioned below said first attachment means." *Id.* at 6. The Defendant requests instead: "the second hook-shaped device capable of fitting into a gap between the dash plates in a vehicle interior positioned below the gap that is adjacent to the steering column to allow tension to be applied to hold the holster mount in place." *Id.*

The language of the fourth disputed term closely tracks the language of the second disputed term. Neither party contests the language which distinguishes the second and fourth terms: "being received in a gap in a vehicle interior positioned below and adjacent a steering wheel column of said vehicle" versus "being received in a lower gap between dash plates in the vehicle interior positioned below said first attachment means." *Id.* The parties' disagreements are limited to the portions which are common to both the second and the fourth disputed term. Doc. 21 at 4-6. For the reasons discussed in the section regarding the second disputed term, the Court construes the fourth term similarly. However, as discussed in that section, the Court finds that the language addressing the hook-shaped devices' design to create tension is necessary in order to construe the patent specification's corresponding structures to Claim 1, but adding the language to both disputed terms would be redundant. The Court therefore adds it to the fourth term and not the second.

Accordingly, the Court construes the fourth disputed term as follows: "this second hook-shaped device capable of being received in a lower gap between dash plates in the vehicle interior positioned below the first hook-shaped device to allow tension to secure the holster vehicle mount."

-15-

## III. CONCLUSION

The claims are construed as discussed above.

**SO ORDERED**, this 17th day of July, 2017.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT